In re Rudy W. MULCAHY and Linda K. Mulcahy, Debtors.

Rudy W. MULCAHY and Linda K. Mulcahy, Plaintiffs,

v.

INDIANAPOLIS MORRIS PLAN CORP., Defendant.

Bankruptcy No. IP79–3550.
Adversary Proceeding No. 79–12.

United States Bankruptcy Court,
S. D. Indiana,
Indianapolis Division.

March 28, 1980.

John J. Petr, Indianapolis, Ind., for defendant.

Sherwood P. Hill, Indianapolis, Ind., for plaintiffs.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY ON PLAINTIFFS' COMPLAINT TO AVOID LIEN

ROBERT L. BAYT, Bankruptcy Judge.

Plaintiffs Rudy W. and Linda K. Mulcahy and defendant Indianapolis Morris Plan Corporation (*hereinafter* "Morris Plan") having appeared by counsel and stipulated to the facts of this cause, the court now makes its

### FINDINGS OF FACT:

1. On or about July 18, 1978, plaintiffs entered into a retail installment contract with Beech Grove Furniture of Beech Grove, Indiana, for the purchase of a sofa, love seat, chair, floor lamp, end table and coffee table (*hereinafter* "living room furniture").

2. Said contract was assigned for value to defendant.

3. On or shortly before January 23, 1979, the Mulcahys sought financing from Morris Plan for the purchase of a bed, night stand, chest and dresser with mirror (*hereinafter* "bedroom furniture") from Richard W. Bennett Furniture of Indianapolis, Indiana.

4. To obtain such financing, the Mulcahys on January 23, 1979, executed a promissory note and security agreement in favor of Morris Plan.

5. The Mulcahys, under the security agreement, granted defendant a security interest in both the living room furniture and the bedroom furniture.

6. The loan proceeds were used to pay off the retail installment contract on the living room furniture held by defendant; to pay Richard W. Bennett Furniture for the bedroom furniture; and to pay off obliga-

tions of plaintiffs owing to Merchants National Bank of Indianapolis and to Sears, Roebuck and Company.

7. On January 26, 1979, defendant filed a U.C.C. Financing Statement with the Recorder's Office of Marion County, Indiana, for the purpose of perfecting its security interest in plaintiffs' living room and bedroom furniture.

8. Plaintiffs subsequently filed bankruptcy and now seek to avoid defendant's lien on their living room furniture under 11 U.S.C. § 522(f) (1979).

And upon such findings of fact the court now makes its

## CONCLUSIONS OF LAW:

1. All things necessary to be done as a prerequisite to this proceeding have been done and this court has jurisdiction over the parties and the subject matter of this cause.

2. First of all, the court notes that the parties have stipulated that Beech Grove Furniture retained a purchase money security interest under the retail installment contract. They have also stipulated that Morris Plan has a purchase money security interest in both the living room and bedroom furniture. It is well established that stipulations of the parties concerning questions of law are not binding on the court. *Swift & Co. v. Hocking Valley Ry.*, 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917); *United States v. Lisk*, 522 F.2d 228 (7th Cir. 1975), *cert. denied* 423 U.S. 1078, 96 S.Ct. 865, 47 L.Ed.2d 89 (1976), *appeal after remand* 559 F.2d 1108 (7th Cir. 1977). Deciding such questions is the responsibility of the court, and it may not abandon, nor may the parties assume, that responsibility. Determining the character of a security interest involves interpreting the contract between the parties, which is a question of law. *Estate of Connelly v. United States*, 398 F.Supp. 815 (D.N.J.1975), *aff'd* 551 F.2d 545 (3d Cir. 1977). The court will therefore make its own determination of the character of the security interest involved in this case.

3. Secondly, counsel indicated at pre-trial conference that the complaint to avoid lien was only to extend to plaintiffs' living room furniture, and asked that the court interpret the parties' Stipulation 10 in that spirit.[1] Plaintiffs' counsel is evidently of the view that no manifest injustice exists in this interpretation. No suggestion of manifest injustice having been made, the court cannot disregard the stipulation on that ground. *Loftin and Woodard, Inc. v. United States*, 577 F.2d 1206 (5th Cir. 1978). On its face, the stipulation can be interpreted as an attempt to state a conclusion of law. However, in light of counsels' pre-trial remarks, the court will interpret Stipulation 10 as being a settlement in regard to plaintiffs' bedroom furniture. That furniture shall remain unaffected by this adversary proceeding.

4. With these threshold matters out of the way, the court concludes that the law is with the Mulcahys and against Morris Plan.

5. Neither party has submitted a copy of the retail installment contract in evidence. The court is therefore unable to determine whether there was *any* security interest retained by Beech Grove Furniture, let alone whether that security interest was purchase money in character. Under such circumstances, the court declines to decide what rights were acquired by Morris Plan when the contract was assigned to it. However, assuming *arguendo* that the assignment gave Morris Plan a purchase money security interest in the living room furniture, that security interest was extinguished by the paying off of the contract with the loan proceeds. Had the Mulcahys gone to a third party lender and borrowed money to pay off Morris Plan, that paying off would certainly have had that effect. The court sees no reasons why a different rule should apply merely because Morris

---

1. "10. That the Defendant has a purchase money security interest in the furniture purchased at Richard Bennett Furniture and that the Plaintiff-Debtors' Complaint to Avoid Lien is not effective as it relates to furniture purchased at Richard Bennett Furniture." Parties' Stipulation of January 14, 1980, # 10, at 2.

Plan transferred money from its right pocket to its left.

■ 6. Apart from the consequences of paying off the retail installment contract, the security interest in the living room furniture created by the security agreement would not have been purchase money. The authorities are unanimous in holding that if consumer goods secure any price other than their own, and there is no formula for application of payments, the security interest in those goods is not purchase money. *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir. 1975); *W. S. Badcock Corp. v. Banks (In re Norrell)*, 426 F.Supp. 435 (M.D.Ga.1977); *Quality Furniture Co., Inc. v. Cooper (In re Johnson)*, 1 Bankr.Ct. Dec. 1023 (S.D.Ala. [Bankr.] 1975); *In re Jackson*, 9 U.C.C.Rep. 1152 (W.D.Mo. [Bankr.] 1971); *In re Brouse*, 6 U.C.C.Rep. 471 (W.D.Mich. [Bankr.] 1969). *Cf. Goodyear Tire & Rubber Co. v. Staley (In re Staley)*, 426 F.Supp. 437 (M.D.Ga.1977) (security agreement specifying first-in, first-out method of applying payments held to create purchase money security interest in stereo). This rule developed out of an attempt by the courts to give effect to the policy expressed in Official Comment 2 of U.C.C. § 9–107;[2] that comment states that purchase money status is not to be extended to security interests in property which secure "antecedent debt." It is true that the above-cited cases dealt with the effect of consolidation or "add-on" provisions in retail installment contracts. However, there is no reason to apply a different rule to security agreements executed as part of refinancing loans or consolidations of loans covering consumer goods. The problem, i. e. inability to determine when any one item is paid off and freed of the security agreement, is the same in either situation. Indeed, at least one case has observed as *dicta* that the rule is more properly applicable to lenders than to sellers. *Kawasho International (U.S.A.), Inc. v. Alper (In re Mid-Atlantic Flange Co.)*, 26 U.C.C.Rep. 203 (E.D.Pa. [Bankr.] 1979).

Defendant has not favored the court with a copy of the security agreement executed in its favor. Since the terms of the agreement are not in evidence, the court will not infer that a provision covering application of payments was included therein. Therefore, the only basis on which Morris Plan could have a purchase money security interest in the living room furniture is if there is an Indiana statute covering application of payments. Although such a provision does exist, the court concludes that it is inapplicable to this case, as will be shown in Conclusion 7 *infra*.

■ 7. Both of the sales made to the Mulcahys and the loan made to them by Morris Plan were subject to the 1969 Uniform Consumer Credit Code, Ind.Code § 24–4.5–1–101 *et seq*. The consumer transactions in question must therefore be analyzed subject to its provisions.

The sale of the living room furniture to the Mulcahys was a consumer credit sale within the meaning of Ind.Code § 24–4.5–2–104 (1976). Beech Grove Furniture was regularly involved in credit transactions of this type. Plaintiffs bought the furniture in their individual capacities for family or household purposes, and the debt was payable in installments. Had the Mulcahys returned to Beech Grove to buy their bedroom furniture, Beech Grove would therefore have been entitled to cross-collateralize under Ind.Code § 24–4.5–2–408 (1976) (*hereinafter* "U.C.C.C. 2.408"), which provides:

> *24–4.5–2–408 [19–22–408]. Cross-collateral.*—(1) In addition to contracting for a security interest pursuant to the provisions on security in sales or leases (24–4.-5–2–407), a seller in a consumer credit sale may secure the debt arising from the sale by contracting for a security interest in other property if as a result of a prior sale the seller has an existing security interest in the other property. The seller may also contract for a security interest in the property sold in the subsequent sale as security for the previous debt.
>
> (2) . . . "Seller in this section does not include an assignee not related to the original seller. [IC 1971, 24–4.5–2–

2. Enacted in Indiana as Ind.Code § 26–1–9–107 (1976).

408, as added by Acts 1971, P.L. 366, § 3, p. 1557].

Under the above statute, Beech Grove could thus have made each parcel of furniture security not only for its own price, but for that of the other parcel as well.

Morris Plan, however, did not have the right to cross-collateralize. There is no evidence in the record such as regular course of dealing, control of the seller's procedures by the lender, or common or interlocking ownership, which suggests any relationship between Morris Plan and Beech Grove.[3] The language of U.C.C.C. § 2.408(2) shows that unrelated assignees such as Morris Plan are excluded from the class of persons affected by the statute. The reason for drawing the distinction between sellers and unrelated assignees becomes apparent upon reflection. Retail installment sellers who carry their own accounts and their related assignees are in a much more vulnerable position than independent financial institutions in the event of default by the buyer. The seller or its surrogate has less cash reserves with which to absorb such a loss than does an unrelated assignee, such as a bank, savings and loan or finance company. Given the high depreciation rate of consumer goods, repossession and resale of the immediate item in question will in most cases be inadequate to make the seller or surrogate whole. Cross-collateralization may thus be the only feasible means by which the seller can protect himself.

8. The fact that Morris Plan could not cross-collateralize has one important consequence to this case. Only consumer credit sellers or their related assignees are subject to Ind.Code § 24–4.5–2–409 (1976) (*hereinafter* "U.C.C.C. § 2.409"), which states:

24–4.5–2–409 [19–22–409]. *Debt secured by cross-collateral.*—(1) If debts arising from two [2] or more consumer credit sales, other than sales primarily for an agricultural purpose or pursuant to a revolving charge account, are secured by cross-collateral (24–4.5–2–408) or consolidated into one [1] debt payable on a single schedule of payments, and the debt is secured by security interests taken with respect to one or more of the sales, payments received by the seller after the taking of the cross-collateral or the consolidation are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been first applied to the payment of the debts arising from the sales first made. To the extent debts are paid according to this section, security interest in items of property terminate as the debt originally incurred with respect to each item is paid.

.     .     .     .     .

[IC 1971, 24–4.5–2–409, as added by Acts 1971, P.L. 366, § 3, p. 1557].

Essentially, the statute provides that payments received on cross-collateralized consumer credit sales are to be applied to the indebtedness on a first-in, first-out basis. The security interest in each item is to terminate as it is paid off. This scheme mitigates the possible unconscionable impact of such agreements. *Cf. Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C.Cir.1965) (cross-collateralization clause in retail installment contracts covering furniture purchases, providing for prorated application of payments, held unconscionable under U.C.C. § 2–302). The formula enables the purchaser to keep consumer goods he has paid off free from the cross-collateralization agreement. It also, however, provides a means for determining precisely what price each of the items in question secures.

Morris Plan, as an unrelated assignee, was not obligated to apply payments received from the Mulcahys on a first-in, first-out basis by virtue of U.C.C.C. § 2.409. Nor is there any provision in the article on loans, Ind.Code §§ 24–4.5–3–101–24–4.5–3–605 (1976) (U.C.C.C. §§ 3.101–3.605), which

3. The context in which the criteria for determining lender/seller relationships have been most frequently set forth is where a lender is denied holder-in-due-course status on a negotiable instrument because of a close relationship to the seller/assignor. These criteria are equally applicable to situations such as the one at bar. *Cf. Unico v. Owen*, 50 N.J. 101, 232 A.2d 405; *see also* White and Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 14–8 (1972), and cases cited therein.

would have imposed such a duty on Morris Plan. There is therefore no applicable formula for application of payments in the case at bar, and defendant's security interest falls within the rule of the cases cited in Conclusion 6 *supra*. The living room furniture secures value other than its own price, and the security interest is therefore not purchase money under Ind.Code § 26–1–9–107(b) (1976) (U.C.C. § 9–107(b)). Since the security interest is nonpurchase-money, it is avoidable by plaintiffs under 11 U.S.C. § 522(f) (1979). The court leaves to Indiana tribunals the question of the exact nature of a security interest such as the one at bar in context other than bankruptcy.

### ENTRY

It is therefore ORDERED, ADJUDGED and DECREED:

1. That defendant's nonpurchase money security interest in plaintiffs' sofa, love seat, chair, floor lamp, end table and coffee table, purchased on or about July 18, 1978 from Beech Grove Furniture, Beech Grove, Indiana, is hereby deemed AVOIDED;

2. And that said furniture is hereby ruled EXEMPT in this bankruptcy proceeding.

It is so ORDERED this 28th day of March, 1980, at Indianapolis, Indiana.