In re Clarence Edward DILLS, Debtor.

Bankruptcy No. 3–80–00165.

United States Bankruptcy Court,
E. D. Tennessee.

July 16, 1980.

R. M. Child, Knoxville, Tenn., for debtor.

Francis Headman, Knoxville, Tenn., for Helen Marx, Tate E. Carty, Knoxville, Tenn., Trustee.

### MEMORANDUM AND ORDER CONFIRMING PLAN

CLIVE W. BARE, Bankruptcy Judge.

I

Objections to confirmation of the debtor's Chapter 13 plan have been filed by a creditor holding an alleged nondischargeable debt. There are no secured claims. In his plan, the debtor proposes to pay creditors holding unsecured claims ".01 on the dollar." Unsecured claims total $7,734.12 with the objecting creditor's claim representing $4,966.56 of that amount. The debtor proposes to pay $10.00 per week until unsecured creditors and an attorney fee of $350.00 have been paid. Thus, payments will extend over a period of approximately one year with payments totaling something less than $500.00, including expense of administration.

In determining whether the debtor's plan meets the requirements for confirmation under § 1325(a) of the Code, it is necessary in this case to review a Chapter XIII proceeding filed by the debtor under the prior Bankruptcy Act.

On September 30, 1970, the debtor filed a petition under Chapter XIII of the Bankruptcy Act, Case No. 28,537. In that proceeding, the debtor proposed to pay unsecured creditors in full. Claims totaling $14,282.17 were filed and allowed, including the claim of Nestor L. Marx in the amount of $9,030.06. Attached to the claim is a supporting statement which in substance avers that the debtor while employed as a collector by Marx who operated a collection agency misappropriated the sum of $7,795.06 of which $2,500.00 was repaid by a surety company. In addition, Marx asserted that unsecured debts (loans) were due him in the amount of $1,235.00. The surety company also filed a claim in the amount of $2,836.25 (judgment on note in the principal amount of $2,500.00).

During the next *nine* years the debtor paid to the Chapter XIII trustee the sum of $8,180.00. The trustee disbursed to Mr. Marx (or to his estate after his death), the sum of $4,416.00 and to the surety company the sum of $1,385.29. See trustee's report dated March 17, 1980. On January 24, 1980, the debtor filed application for a discharge under § 661 of the Bankruptcy Act.[1] No-

1. "A debtor who has not completed his payments under the plan may by application request a discharge under Section 661 of the Act." Bankruptcy Rule 13–404(b)(1).

"If at the expiration of three years after the confirmation of a plan the debtor has not completed his payments thereunder, the court may nevertheless, upon the application of the debtor and after hearing upon notice, if satisfied that

tice of hearing on the debtor's application was given to all parties in interest but at the hearing the debtor withdrew his application and moved to dismiss the Chapter XIII proceeding. An order of dismissal was entered February 14, 1980.[2]

On February 15, 1980, the debtor filed the present Chapter 13 case and now seeks to have the plan confirmed by this Court. Helen Marx, as administrator of the estate of Nestor Marx, holding a claim in the amount of $4,966.56, objects to confirmation alleging *inter alia* that the plan is not filed in "good faith."

The debtor is single but his father, mother and half–brother are partially dependent upon him for support. He is employed as a "finish worker" with gross income of $168.00 per week and net income of $97.00 per week. His assets consist of a 1970 Chevrolet truck with a present market value of $900.00 and personal effects valued at $400.00.

## II

Before a Chapter 13 plan may be confirmed, there are six requirements which must be met. Section 1325(a) states the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid

on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

The objecting creditor in this case contends the debtor's proposed payment of one percent is "ridiculously low"; hence, the plan is not proposed in "good faith." The good faith requirement of § 1325(a)(3) was derived from § 651 of the Bankruptcy Act. There are no published opinions construing the good faith requirement under § 651, however.

The purpose of the Bankruptcy Code is to provide the debtor with a fresh start. There are three proceedings under the Code for debtors to receive this fresh start–Chapter 7, Chapter 11, and Chapter 13. Under Chapter 7 and Chapter 11 the debtor is discharged from all debts except those specifically enumerated in § 523(a). Thus, in a Chapter 7 or Chapter 11 case, if the Marx debt is determined to fall into one of the categories of nondischargeable debts, the debt would not be discharged. The same result would have prevailed under the prior Bankruptcy Act, either in a liquidation case under Chapters I–VII or a case under prior Chapter XIII.

the failure of the debtor to complete his payments was due to circumstances for which he could not be justly held accountable, enter an order discharging the debtor from all his debts and liabilities provided for by the plan, but excluding such debts as are not dischargeable under section 17 of this Act held by creditors

who have not accepted the plan." Bankruptcy Act, § 661 (11 U.S.C. 1061).

2. "... (O)n application of the debtor ... the court shall enter an order dismissing the case." Bankruptcy Rule 13–215(a)(2).

Since the new Code became effective, several bankruptcy courts have construed the "good faith" requirements of § 1325(a)(3). The answers have varied widely, resulting in a lack of uniformity.[3] In some cases in which the debtor's plan has provided a zero payment or minimal payment to unsecured creditors, "good faith" has been construed to mean "best effort." Yet, as succinctly pointed out by Judge Schwartzberg in *In re Seman*, 4 B.R. 568, —— B.C.D. —— (Bkrtcy.S.D.N.Y.), it does not clarify the problem to merge "best effort" into the meaning of "good faith," or to tack on nebulous and subjective concepts beyond the commonly accepted notions that good faith exists when the debtor has complied with all of the requirements of Chapter 13, although the plan may not represent the debtor's best effort. "(I)t could not be said that such a plan violates the spirit and purpose of Chapter 13 so as to be regarded as lacking in good faith."[4]

The House and Senate Reports on the Bankruptcy Reform Act of 1978 give no indication of how "good faith" is to be applied. The House Report, however, does provide an overview of Chapter 13, its purpose, and the difference between Chapter 13 and former Chapter XIII. One statement in the report gives considerable assistance in deciding what types of plans should be approved:

"The new chapter 13 will permit almost any individual with regular income to propose and have approved a *reasonable plan* for debt repayment based on that individual's *exact circumstances....*" (Emphasis added). S.Rep.No. 989, 95th Cong., 2d Sess. 13 (1978), reprinted in (1978) U.S. Code Cong. & Adm. News, pp. 5787, 5799.

Thus, Congress has created a standard by which Chapter 13 confirmation is to be judged. This Court therefore will decide this and all other Chapter 13 cases when objections to confirmation are filed not by using any "rule of thumb," but by determining whether a "reasonable" plan has been proposed based on the individual's "exact circumstances." Yet, the Court will keep in mind that the primary purpose of Chapter 13 is to enable an individual under court supervision and protection to repay all or part of his debts over an extended period. See House Report No. 95–595, 95th Cong., 2d Sess. (1978) 118, reprinted in (1978) U.S. Code Cong. & Adm. News, p. 6078. Factors which are helpful in making this determination may be taken from *In re Iacovoni*, 2 B.R. 256, 5 B.C.D. 1270 (Bkrtcy. Utah), *Iacovoni* was a consolidation of several Chapter 13 plans, none of which proposed any payment to unsecured creditors. The court listed four factors which it believed should be considered as indicative of whether a plan is proposed in good faith:

1. The budget of the debtor, i. e., how much the debtor feasibly can pay.

2. The future income and payment prospects of the debtor.

3. The dollar amount of debts outstanding, and the proposed percentage of repayment.

3. *In re Cloutier*, 3 B.R. 584, 6 B.C.D. 196 (Bkrtcy.D.Colo); *In re Cole*, 3 B.R. 346, 6 B.C.D. 216 (Bkrtcy.S.D.W.Va.); *In re Keckler*, 3 B.R. 155, 6 B.C.D. 14 (Bkrtcy.N.D.Ohio); *In re Beaver*, 2 B.R. 337, 5 B.C.D. 1285 (Bkrtcy.S.D. Cal.); *In re Armstrong*, 3 B.R. 615, 6 B.C.D. 259 (Bkrtcy.D.Or.); *In re Johnson*, 5 B.R. 40, 6 B.C.D. 277 (Bkrtcy.S.D.Ohio); *In re McMinn*, 4 B.R. 150, 6 B.C.D. 297 (Bkrtcy.D.Kan.); *In re Iacovoni*, 2 B.R. 256, 5 B.C.D. 1270 (Bkrtcy.D. Utah); *In re Burrell*, 2 B.R. 650, 5 B.C.D. 1321 (Bkrtcy.N.D.Cal.); *In re Anderson*, 3 B.R. 160, 6 B.C.D. 73 (Bkrtcy.S.D.Cal.); *In re Harland*, 3 B.R. 597, 6 B.C.D. 235 (Bkrtcy.D.Neb.); *In re Powell*, 2 B.R. 314, 5 B.C.D. 1233 (Bkrtcy.E.D. Va.); *In re Howard*, 3 B.R. 75, 5 B.C.D. 1375 (Bkrtcy.S.D.Cal.); *In re Curtis*, 2 B.R. 43, 5 B.C.D. 1214 (Bkrtcy.W.D.Mo.); *In re Webb*, 3 B.R. 61, 5 B.C.D. 1379 (Bkrtcy.N.D.Cal.); *In re Terry*, 3 B.R. 63, 5 B.C.D. 1397 (Bkrtcy.W.D. Ark.); *In re Jenkins*, 4 B.R. 278, 6 B.C.D. 378 (Bkrtcy.D.Colo.); *In re Marlow*, 3 B.R. 305, 6 B.C.D. 77 (Bkrtcy.N.D.Ill.); *In re Seman*, 4 B.R. 568, —— B.C.D. —— (Bkrtcy.S.D.N.Y.); *In re Hurd*, 4 B.R. 551, 6 B.C.D. 412 (Bkrtcy.W.D. Mich.).

4. Although Judge Schwartzberg found that a zero plan did not violate the spirit and purpose of Chapter 13 as lacking "good faith," he rejected confirmation of the plan "for cause" because in his opinion Congress did not intend that zero plans should be confirmed, citing Code § 1307(c).

4. The nature of the debts sought to be discharged; specifically, to what extent the debtor is invoking the advantage of the broader Chapter 13 discharge which may carry with it concomitant obligations of repayment effort.

As stated previously, the debtor in the instant case takes home $97.00 per week. The debtor estimates his future income as being $417.00 per month. Living expenses are $365.00 per month. This leaves an excess of $52.00, of which $43.00 will be paid to the trustee under the plan for a period of one year. The debtor owes $7,734.12 in unsecured debts. He proposes to pay these creditors one percent. Of these debts, the largest is the alleged nondischargeable debt of $4,966.56 owing to the Marx's estate. An additional factor that this court must consider is the debtor's partial support of his mother, his stepfather and his half-brother. In an amendment to the schedules filed herein, the debtor shows that support as follows:

I am a resident of the home of my step-father, Howard Blattenberger and my mother, Helen Blattenberger. Also a resident of that home is a half-brother, Danny Blattenberger. My step-father is retired and has an income of $370.00 per month. My half-brother, Danny Blattenberger, is not employed, has an emotional problem, is 26 years of age and is not able to hold employment and therefore contributes nothing in earnings. My mother, Helen Blattenberger, is not employed and has no income. The only income this house has is my salary and the retirement of Howard Blattenberger. The retirement of Howard Blattenberger is used to make the house payment of $113.00 per month, utilities of $125.00 a month, telephone $26.00 a month, an automobile payment of $60.00 per month. My check is delivered to my mother from which she purchases all the food, clothing, automobile maintenance and expense, life insurance, car insurance and fuel for heating the house. The fuel for heating the house in the winter of 1979–80 cost $700.00.

The undisputed facts outlined herein show that the debtor has only a minimal amount of income left after payment of living expenses, and that amount will be reduced significantly by the payments under the plan, leaving only $2.25 per week. Nor can it be overlooked that over a period of nine years the debtor paid 48% of the objecting creditor's total original claim, or 50% of the alleged nondischargeable claim.

In *In re Keckler*, 3 B.R. 155, 6 B.C.D. 14 (Bkrtcy.N.D.Ohio 1980), Judge White confirmed a 5% plan where $9,363.00 of total unsecured obligations amounting to $11,500.00 represented an admittedly nondischargeable debt (embezzlement). The debtor had no nonexempt assets. She was a student on a limited income. She had been released from prison "and will be handicapped in seeking employment because of her imprisonment." Thus, in confirming the plan, Judge White concluded that the plan was "reasonable" based on the debtor's "exact circumstances." Judge Nims observed in *In re Hurd*, 4 B.R. 551, 6 B.C.D. 412 (Bkrtcy.N.D.Mich.), that "(U)nder the very special facts of this case, I would not differ with Judge White's decision."

If the "fresh start" pronouncements of the Supreme Court are to be given any reasonable construction, it clearly appears that the debtor in the case before this court is entitled to those benefits.

"This [Supreme] Court on numerous occasions has stated that '[o]ne of the primary purposes of the bankruptcy act' is to give debtors a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Accord, e. g., *Harris v. Zion's Savings Bank & Trust Co.*, 317 U.S. 447, 451, 63 S.Ct. 354, 357, 87 L.Ed. 390 (1943); *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 218, 62 L.Ed. 507 (1918); *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–555, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)." *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

Over a period of some nine years the debtor paid some 50% of the alleged nondischargeable debt. He has a minimal income. As heretofore stated, he will have only $2.25 per week left during the next year after paying necessary living expenses and the $10.00 per week to the Chapter 13 trustee.

This Court has not the slightest doubt but that the Congress in enacting § 1325(a) intentionally provided that in a Chapter 13 case all debts with the exception of nondischargeable debts specifically enumerated therein would be discharged in a Chapter 13 case. If the Congress determines that nondischargeable debts in Chapter 13 cases should follow the nondischargeability provisions of Chapter 7 and Chapter 11 cases, the Congress may so provide. Judicial legislation by this court should be and will be avoided.

This Court finds and concludes that the Chapter 13 plan of Clarence Edward Dills meets the requirements of § 1325(a) and should be confirmed.

IT IS SO ORDERED.