**In re Albert Leon COOMER and Brenda Kay Coomer f/k/a Brenda Kay Spears, Debtors.**

**Albert Leon COOMER and Brenda Kay Coomer, Plaintiffs,**

v.

**BARCLAYS AMERICAN FINANCIAL, INC. and Merit Finance Company, Defendants.**

**Bankruptcy No. 3–80–00560.**

United States Bankruptcy Court, E. D. Tennessee.

Dec. 23, 1980.

I. T. Collins, Jr., Kingsport, Tenn., for plaintiffs.

Jerry S. Jones, Johnson City, Tenn., for defendant, Merit Finance Company.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The question in this proceeding concerns the character of Merit Finance's security interest in certain household goods owned by the debtors, the Coomers. The Coomers seek to avoid Merit's security interest in the household goods. They can avoid it only if it is a *nonpurchase–money* security interest. 11 U.S.C. § 522(f)(2)(A) (1979).[1]

The facts are simple. The Coomers had obtained a loan from Merit but had not completely repaid it. They found some new furniture that they wanted to buy from Paul Bellamy Furniture. Mr. Coomer went to Merit to obtain a loan to buy the furniture. He was told to get a list with prices from Paul Bellamy. He got the list and took it to Merit. Merit made the loan. It issued a check to Mr. Coomer for $1,421.01, which he used to pay most of the purchase price of the furniture. The Coomers themselves had to pay $62.79.

---

1. Section 522(f)(2)(A) includes household furnishings and household goods, perhaps a broader category. For convenience the court will use goods, though furniture fits within the furnishings category.

Merit "consolidated" the loan for the furniture with the old loan. At the time the Coomers owed on it $1,172.20. Credits and refunds reduced that to $938.80 which was also "lent" to the Coomers to pay off the old loan.

Merit retained a security interest in the furniture bought from Paul Bellamy and in other household goods. Merit does not contend that its security interest in the other household goods is purchase money. The issue is whether or to what extent it has a purchase money security interest in the furniture bought from Paul Bellamy.

There is no question as to perfection of its security interest since it filed a financing statement covering all of the collateral.

The Bankruptcy Code does not define nonpurchase money or purchase money security interest. Its definition of security interest is not helpful. 11 U.S.C. § 101(37) (1979).

The parties and other courts have looked to Article 9 of the Uniform Commercial Code (the UCC) for the definition of purchase money security interest. Tenn.Code Ann. § 47–9–107 (Repl.Vol.1979). Section 9–107 of the UCC of Tennessee defines it as follows.

> A security interest is a "purchase money security interest" to the extent that it is:
>
> (a) taken or retained by the seller of the collateral to secure all or part of its price; or
>
> (b) taken by a person who by making advances ... gives value to enable the debtor to acquire rights in ... the collateral if such value is in fact so used.

Merit's security interest at first blush appears to satisfy subsection (b)'s criteria. But there is a problem.

Merit can have a purchase money security interest in the new furniture only to the extent it made advances to enable the Coomers to buy the furniture and the money was so used. The advance to pay off, or consolidate, the old loan was not made to enable the Coomers to buy the furniture and was not so used. New furniture also secures repayment of that part of the total

loan. Merit's security interest in the new furniture cannot be purchase money to the extent it secures payment of the old loan part of the debt. See Comment 2 to § 9–107.

A similar problem occurs in cases under subsection (a) of the definition. Typically the seller has sold several items at different times, combined all the debts, and retained a security interest in each item to secure payment of the total debt. The courts have held that for a security interest in one item to be purchase money, the item must secure only its price. *In re Manuel*, 507 F.2d 990, 16 UCC Rep.Serv. 493 (5th Cir. 1975); *In re Norrell*, 426 F.Supp. 435, 21 UCC Rep.Serv. 1185 (M.D.Ga.1977); *In re Staley*, 426 F.Supp. 437, 22 UCC Rep.Serv. 799 (M.D. Ga.1977); *In re Dills*, 7 B.R. 160 (Bankr.Ct. E.D.Tenn.1980) (J. Bare); *In re Scott*, 5 B.R. 37, 6 B.C.D. 407, 2 C.B.C.2d 1012, 29 UCC Rep.Serv. 1038 (Bankr.Ct.M.D.Pa. 1980); *In re Jackson*, 9 UCC Rep.Serv. 1152 (Bankr.Ct.W.D.Mo.1971); *In re Brouse*, 6 UCC Rep.Serv. 471 (Bankr.Ct.W.D.Mich. 1969). See also *In re Simpson*, 4 UCC Rep. Serv. 243 & 250 (Bankr.Ct.W.D.Mich.1966) (2 opinions).

■ Those cases sometimes seem to say that if an item secures any debt other than its price, then the security interest is automatically nonpurchase money. That ignores the language of the definition which makes a security interest purchase money *to the extent* the collateral secures its price or purchase money. There is no requirement in the definition that the secured party intend that an item secure only its purchase money.

The real problem is proving the purchase money security interest. See *In re Manuel, In re Norrell, In re Staley,* and *In re Brouse,* above. Section 9–107(a) does not completely exclude the seller's purchase money security interest, but without a method of determining its extent, the seller must be held not to have a purchase money security interest.

■ Likewise, there is nothing in section 9–107(b) that says that a lender who makes

a partly purchase money loan cannot have a partly purchase money security interest. Again the problem is proving the purchase money security interest. As to mixed loans, the problem is compounded. There must be both a method of apportioning the loan between the purchase money and nonpurchase money parts and a method of applying the payments to the parts. One court has intimated that the rule in the sellers' cases is more appropriate to cases involving purchase money lenders. *In re Mid–Atlantic Flange Co., Inc.*, 26 UCC Rep.Serv. 203 (Bankr.Ct.E.D.Pa.1979). See also *In re Jones*, 5 B.R. 655, 6 B.C.D. 848 (Bankr.Ct.E.D.Pa.1980), *In re Mulcahy*, 3 B.R. 454, 1 C.B.C.2d 887 (Bankr.Ct.S.D.Ind.1979).[2] Despite these problems the court is reluctant to hold that Merit's security interest in the new furniture is entirely nonpurchase money.

Section 522(f) applies to a common situation. The committee reports say only that it is meant to protect the debtor's exemptions. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 362, U.S. Code Cong. & Admin. News 1978, p. 5963; S.Rep.No. 95–989, 95th Cong., 2d Sess. 76, U.S. Code Cong. & Admin. News 1978, p. 5787. The reasons are more explicit in the Report of the Commission on Bankruptcy Laws of the United States. H.R.Doc.No. 93–197, 93d Cong., 1st Sess., Part I (1973).

The Commission took the view that non-purchase–money security interests in household goods generally have no value to the creditor, except as a means of coercing payment by threatening repossession. Report, Part I at 169. The Commission concluded that debtors should not be denied the benefit of their exemptions in household goods because of valueless security interests. Report, Part I at 173. That idea led to § 522(f) of the Bankruptcy Code. 9 Bkr. L.Ed. § 81:1; —Cong.Rec. E21 (daily ed. Jan. 4, 1977) (remarks of Rep. Edwards).

The main reason that the Commission and Congress prescribed this treatment was their opinion that the household goods securing nonpurchase money debts generally have no substantial market value. That conclusion is most appropriate when the debtor obtained a loan and as collateral put up used household goods. The conclusion is less appropriate for new or used goods bought by the debtor on secured credit from the seller or with the proceeds of a purchase money loan.

■ The court believes that the purpose of § 522(f)(2)(A) generally is to avoid security interests that debtors grant in their already owned, used household goods. Merit's security interest in the Coomers' new furniture does not fit that pattern. But under case law interpreting the UCC it would be a nonpurchase money security interest. The problem in meeting the requirements of UCC § 9–107(b) is a practical one -determining the amount of its purchase money still secured by the furniture.

The court should also consider the practical effects of following or not following the UCC decisions.

If Merit's security interest in the new furniture is totally avoided, then the Coomers will keep the furniture as exempt property free of Merit's claim.

On the other hand, assume that to some extent Merit has a purchase money security interest in the new furniture. That security interest cannot be avoided under § 522(f). But what would be significant is the value of the furniture. If it is worth *less than* the purchase money part of the debt, then the Coomers would reassume the debt or redeem the furniture only for its value. See 11 U.S.C. §§ 506, 524(c) & (d), 722 (1979).

In this case only the furniture bought from Paul Bellamy could be subject to a non--avoidable purchase money security interest. It was bought for less than $1,500 and now is probably worth less than what was paid for it. Merit's claim is for $2,926.06, a reduction of $1,330.94 on the consolidated debt. The point is that for the purposes of § 522(f) a court might at times avoid the problem of apportioning the debt

---

**2.** These two cases applied the rule to purchase money lenders under § 522(f).

and applying payments by first comparing the value of the purchase money collateral to the amount of the debt, particularly as to later purchases. In several cases a seller's or lender's security interest in the last item purchased survived by going unchallenged. *In re Manuel, In re Norrell, In re Dills, In re Mulcahy,* above. In this case, however, the court cannot reach that conclusion without confronting the problem of determining the amount of the purchase money debt.

The court has expressed its reluctance to follow the UCC rule because in this case it may not properly reflect the policy behind § 522(f)(2)(A). But as a general rule it is not entirely contrary to the policy behind § 522(f), which is part of the policy of the bankruptcy law to give individual debtors a "fresh start".

The court is aware that the rule presents a new problem for secured creditors when applied in this context. The perfection problem under the UCC could be solved by filing a financing statement. That is no help under § 522(f). But the rule is not new. When a lender consolidates a purchase money loan with a nonpurchase money loan, it effectively gives up its purchase money status unless there is some method provided for determining the extent to which each item of collateral secures its purchase money. Lenders have known that for some time.

The re-emergence of the problem under § 522(f) should have been expected, at least as to recent security interests. Congress was surely aware that the UCC definition and decisions under it would be used to construe "nonpurchase-money". The court cannot say that application of the rule is an unfair surprise.

Another rule might also be inconsistent with the policy of § 522(f). For example, in this case Merit retained a security interest in goods other than the new furniture to secure its purchase money. Outside of bankruptcy the security interest in the other goods would be enforceable. They would also secure the purchase money part of the debt. In attempting to apply § 522(f) fairly, how should the court consider that fact?

The consolidation of loans may be much more complex than in this case. The policy behind § 522(f)(2)(A) may often be an uncertain guide.

Furthermore, the administration of bankruptcy cases demands a workable and clear rule. Without some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money.

The court concludes that the rule should be applied in this case. The new furniture secures a debt for more than its purchase money. There is no method for determining the extent to which the new furniture secures only its purchase money. Accordingly, the security interest is nonpurchase money.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.