**In re David SLAY and Elizabeth Ann Herod Slay, Debtors.**

**David SLAY and Elizabeth Ann Herod Slay, Plaintiffs,**

**v.**

**PIONEER CREDIT COMPANY, Defendant.**

**Bankruptcy No. 1–80–01112.**
**Adversary Proceeding No. 1–80–0231.**

United States Bankruptcy Court,
E. D. Tennessee.

Dec. 31, 1980.

Robert T. Harriss, Rossville, Ga., for plaintiffs.

Mark J. Mayfield, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This case should be considered in connection with *In re Coomer,* 8 B.R. 351, decided on December 23, 1980, by this court. No. 3-80-00560.

In this case the debtors, David and Elizabeth Slay, seek to avoid the security interest of Pioneer Credit Company in certain of their household appliances and furnishings. They can do so only if Pioneer's security interest is nonpurchase money. 11 U.S.C. § 522(f)(2)(A) (1979).

The question is whether or to what extent Pioneer has a purchase money, and therefore nonavoidable, security interest in the goods.

In January, 1979, the debtors made their first loan from Pioneer. They used the proceeds of the first loan to buy some appliances and furniture for their household use. Pioneer issued a check for $1,746.05 to debtors and the seller. Pioneer retained a security interest in the items purchased and filed a financing statement. The financing statement shows the amount of the debt as $2,760.00.

In February, 1980, the debtors made their second loan from Pioneer. They obtained $617.32 in cash. The second loan was in the amount of $3,816.00. Pioneer's statement shows that $1,815.28 of the second loan was used to pay off the first loan. As security for the second loan Pioneer retained a security interest in the furniture and appliances, and also took a mortgage on the Slays' real property.

The Bankruptcy Code does not define purchase money or nonpurchase money security interests. Courts have generally looked to Article 9 of the Uniform Commercial Code (UCC) for a definition of purchase money security interest. It is defined in ·UCC § 9 107, Tenn.Code Ann. § 47-9-107 (Repl.Vol.1979). Subsection (b) is applicable to this case,

A security interest is a "purchase money security interest" to the extent that it is

.     .     .     .     .

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral of such value is in fact so used.

The essence of a purchase money security interest is that the collateral acquired secures payment of its purchase price. If it secures payment of some other debt, then to that extent it is not purchase money. That is part of the problem in this case. The security interest in the furniture and appliances secures a debt partly attributable to the loan of its purchase money and partly attributable to another loan.

In *Coomer* the court pointed out that the problem in such cases usually is that there is no way to determine to what extent the debt is a purchase money debt, and so, no purchase money security interest can be found. The court also pointed out that the rule denying the secured party any purchase money security interest may not be completely consistent with the policy of § 522(f)(2)(A). The court reasoned that § 522(f)(2)(A) was generally intended to avoid security interests that debtors grant in their already-owned, used household goods. Therefore the question was whether the court should determine the amount of the purchase money debt, in the absence of any agreement by the parties, so that the policy of the subsection would not be carried too far.

Before considering whether this security interest falls within the policy behind the provision, there is a problem that was not present in *Coomer* and must be addressed first.

In *Coomer* the purchase money loan was second and was consolidated with an earlier nonpurchase money loan. There was no question that the consolidated loan was in part a purchase money loan. In this case the consolidated loan did not directly provide any purchase money.

The problem was considered in *In re Jones*, 5 B.R. 655, 6 BCD 848 (Bkrtcy.M.D.N.C.1980). The court considered the effect of refinancing by a purchase money lender.

The lender lent the purchase money.

On four occasions thereafter ... the Debtors and the creditor refinanced or "flipped" the account in order to cure a delinquency and bring the account current. Each refinancing resulted in the opening of a new account with the old account being marked "paid by renewal." ... Each renewal note retained the identical collateral used to secure the refinanced note and advanced a sum of additional money. The sums advanced plus the amounts used to pay off the prior note never exceeded the sums of the original obligation.

5 B.R. 655, 656, 6 BCD 848, 849.

The court in *In re Jones* held that the lender did not have a purchase money security interest. The court's reliance on the later advances suggests that the problem was, as in *Coomer*, determining the amount of the purchase money debt. But the court also suggested that the first refinancing, without regard to any further advances, ended the purchase money character of the debt. The court held the lender strictly to the form of the transaction. On refinancing, the lender's documents showed that the purchase money loan was paid. Thus the refinancing loan was not made to enable the debtors to acquire rights in the collateral and was not so used. Rather, the proceeds were used to pay an antecedent debt. That it happened to be a purchase money debt did not make the loan a purchase money loan.

On the facts in *Jones*, the court did not discuss whether the lender might have been treated as the successor to its purchase money rights. See § 9–107, Comment 1, ¶ 2. Strict construction of the statute and the lender's own documents caused the court to reason that the form of the transaction was not a combination or continuation but a new loan. The new loan did not fit the strict purchase money definition in U.C.C. § 9·107(b).

Under the reasoning in *Jones*, the consolidated loan in this case would be treated as an entirely new loan. It would not be in any part a purchase money loan. That

would put Pioneer's security interest clearly within the policy of § 522(f)(2)(A). The debtors would have granted Pioneer a security interest in their already-owned, used household goods.

There is another case on whether a lender has a purchase money security interest under § 522(f). *In re Mulcahy*, 3 B.R. 454, 1 C.B.C.2d 887 (Bkrtcy.S.D.Ind.1980). In *Mulcahy* the lender was assigned one purchase money debt and security interest. Thereafter it made a purchase money loan and consolidated it with the earlier debt. The court followed the established rule.

There is a practical basis for the holdings in *Jones* and *Mulcahy*. At some point the number of transactions between the lender and the debtor destroys any claim that the debt is part purchase money. The debt may be composed of several purchase money and nonpurchase money loans secured by the goods purchased and other goods, with payments having been made on all the various combinations up to the time of bankruptcy. The court should not be called on to separate such a mass of transactions. In that respect, *Coomer* was a simple case since there were only two loans and the second and larger loan was the purchase money loan.

There is another practical consideration that is more evident in this case than it was in *Coomer*. Secured creditors will argue that consolidation is done for its and the borrower's convenience. The court does not doubt that is true. It also does not doubt that consolidation is a source of profit for lenders. A look at the totals before and after consolidation in this case and in *Coomer* shows that. Of course, there is nothing wrong with that. But the policy of § 522(f)(2)(A) should not be unduly narrowed. In clear cases of purchase money lending secured lenders should be protected. In other cases, the fresh start policy behind § 522(f) must guide the court.

■ This court is in agreement with the decision in *In re Jones*. When a lender consolidates a purchase money loan, the lender effectively gives up its purchase money status. This is so because generally there is no method of apportioning the loan between purchase money and nonpurchase money and no method of applying the payments to the parts. In *Coomer* the court cited many cases which have held that for a security interest in one item to be purchase money, the item must secure only its price.

The present case presents an exception to the general rule. After consolidation of the purchase money loan with the later loan, there were *no* payments made. The court can easily determine the amount of the purchase money debt. It is what they owed on it at the time of the consolidation. Pioneer has a secured claim for the value of the purchase money collateral. The court will not avoid the security interest. Unlike the problem in *In re Jones*, the court has no problem in determining the extent of the purchase money debt. The problem arises only after payments have commenced. In those cases the court will allow the lien to be avoided.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.