In re Larry Cornelius **LITTLEJOHN**, Jean Wilson Littlejohn, Debtors.

**CREDITHRIFT OF AMERICA, Plaintiff,**

v.

Larry Cornelius **LITTLEJOHN**, Jean Wilson Littlejohn, Defendants.

Bankruptcy No. 3–81–02298.
Adv. No. 3–81–0525.

United States Bankruptcy Court,
W. D. Kentucky.

March 6, 1982.

Steve Crone, Louisville, Ky., for plaintiff.

James F. Collins, III, Louisville, Ky., for debtors.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case comes before the Court on complaint of Credithrift of America (Credithrift), a creditor, by counsel, to lift the automatic stay pursuant to 11 U.S.C. § 362, in order to repossess certain items of household furniture in which it holds a security interest. The debtors, by counsel, seek to avoid the lien of Credithrift pursuant to 11 U.S.C. § 522(f).

Previously, in the case of *In Re Cunningham, et al.*, Bkrtcy., 17 B.R. 463, 1981, this Court found that a nonpossessory, nonpurchase money lien on exempt property of the debtor consummated after November 6, 1978 (the date of enactment of the Bankruptcy Reform Act of 1978), is avoidable by debtors, does not deprive creditors of due process, and thus 11 U.S.C. § 522(f) has constitutionally permissible application to those liens. As the transaction or transactions in issue occurred in 1979–1980, the question to be decided then relates to the nature or character of the interest(s) involved—i.e., whether the resulting interest may be characterized as a purchase money security interest, and as such is not subject to avoidance under 11 U.S.C. § 522(f).

The facts as they pertain to the question before the Court are undisputed and may be briefly recited as follows:

On or about August 15, 1979, the debtors entered into a retail installment contract

with Smith Appliance and Furniture Co., Inc., for the purchase of various items of furniture with the total amount of $1,497.10 being the deferred payment price. This contract was thereafter assigned to Credithrift.

Subsequently, on March 18, 1980, the debtors entered into a transaction with Credithrift whereby the previous assigned contract was marked "paid by renewal 3–18–80". At this time the debtors owed a net balance of $1,027.39 with a gross balance of $1,224.14. A security agreement was executed which listed the identical items of furniture as collateral, and a check was made to debtors in the approximate amount of $8.17 as proceeds of the loan renewal. This check was then endorsed to Credithrift by the debtors and credited as a payment on the outstanding balance due. The interest rate of the second transaction was higher than that of the original installment contract, but the principal amount financed is noted as $1160.00 which would appear to be the pay-off price due on the original contract.

There is no indication that any financing statement was filed to perfect the security interest taken under the installment contract. On March 28, 1980, the security interest resulting from the renegotiation transaction was perfected by filing in the Jefferson County Court Clerk's Office.

The debtors filed a petition pursuant to Chapter 7 of the Bankruptcy Code on September 8, 1981, and subsequently moved to avoid the creditor's lien on exempt household furniture. The creditor, by counsel, filed a complaint to lift the automatic stay in order to repossess the collateral, contending that it holds a valid purchase money security interest in the household furniture, and that the lien thereon is therefore not subject to avoidance.

The United States Bankruptcy Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

Section 522(f) of the Bankruptcy Code, 11 U.S.C. § 522(f), states in part:

"... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is—

... (2) a nonpossessory, nonpurchase money interest in any—

(a) household furnishings, household goods ... that are held primarily for the person, family, or household use of the debtor or a dependent of the debtor."

Kentucky Revised Statute 355.9–107 reads in its entirety as follows:

"A security interest is a 'purchase money security interest' to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

Admittedly, Credithrift was not the seller here, and so must fit, if at all, within the subsection (b) category in order to hold a purchase money security interest. Comment 2 of the drafters of § 9–107 of the Uniform Commercial Code states:

"[w]hen a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value 'by making advances or incurring an obligation'; the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt."

Credithrift has no purchase money security interest under this section as its interest was taken as security for a preexisting claim belonging to the seller, Smith Furniture Co. Does Credithrift, however, acquire a purchase money security interest as assignee of the retail installment contract? There is little, if any, case law which

provides insight into this matter. In the several cases involving similar matters, the continued status of a purchase money security interest after assignment is assumed. See *In Re Ten Brock*, 4 UCC Rep.Serv. 712 (W.D.Mich.1966), Bankruptcy No. 28, 123–B; *In Re King-Porter Co., Inc.*, 9 UCC Rep.Serv. 339 (5th Cir. 1971); *General Motors Acceptance Corp. v. Troville*, 6 UCC Rep.Serv. 409 (N.D.Mass.1969).

■ This Court is thus led to the conclusion that initially Credithrift held a purchase money security interest in the household furniture by virtue of assignment of the retail installment contract from the seller. No document was required to be filed as a condition of perfection under KRS 355.9–302 which states in pertinent part:

(1) A financing statement must be filed to perfect all security interests except the following:

. . . (d) a purchase money security interest in consumer goods. . . .

The March renegotiation transaction occurred ostensibly for the purpose of bringing the debtors' account current. The identical items of collateral were listed on the chattel mortgage then executed, and no additional funds were advanced to the debtors. The question then arises as to whether or not the renewal loan of March 18, 1980, converted the plaintiff's purchase money security interest into a nonpurchase money security interest.

The authorities have been unanimous in holding that if consumer goods secure any price other than their own, and there is no formula for application of payments, the security interest in those goods is not purchase money. *In Re Johnson*, 1 B.C.D. 1023 (S.D.Ala.1975); *In Re Norrell*, 426 F.Supp. 435 (M.D.Ga.1977); *In Re Manuel*, 507 F.2d 990 (5th Cir. 1975); *In Re Mulcahy*, 3 B.R. 454 (Bkrtcy.S.D.Ind.1980); *In Re Jackson*, 9 UCC Rep.Serv. 1152 (W.D.Mo.1971); Cf. *In Re Staley*, 426 F.Supp. 437 (M.D.Ga.1977) (security agreement specifying first-in, first-out method of applying payments held to create a purchase money security interest in one item, a stereo).

In the case of *In Re Manuel, supra*, the Fifth Circuit held that the statutory requirements of a purchase money security interest require that such interest be in the item purchased; and the purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created, if the vendor is to be protected in the absence of filing. The Court voided a security interest in all items made under a prior security interest agreement and specifically stated that they did not express any view as to whether there was a valid purchase money security interest in the subsequent purchase of a TV set. The prior purchase and the balance due thereunder were consolidated in the security agreement taken on the later purchase of the TV set.

"In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation." *Cantrill Construction Company v. Carter*, 418 F.2d 705, 707 (6th Cir. 1969), citing *Porter v. Bedell*, 273 Ky. 296, 298, 116 S.W.2d 641 (1938).

A "novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirwell Elec. Co.*, 265 Ky. 414, 417, 96 S.W.2d 1023, 1025 (1936).

■ It has been found that intent is the essential element in proving a novation. *Cantrill Construction Company v. Carter, supra*, at 707. In *Cantrill*, the Court states: ". . . [I]t is clear that the parties to the transaction did not intend that the new note was to extinguish the original obligation for the note specifically recites that it is 'Renewal No. 1 Orig. Amt. $30,310.00.' It also recites the date of the original loan and refers to the collateral for that loan. It is difficult to imagine a clearer case than this." *Id.* at 707.

In the case, *In Re Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C.1980), the Court held that the character of the original lien was dis-

**698**

charged by the advancement of additional sums and refinancing of the note. Here, the Court suggested that the first refinancing without regard to any further advances ended the purchase money character of the debt, and held the lender strictly to the form of the transaction. The reasoning in *Jones, supra,* was followed in *In Re Alston,* 11 B.R. 184, 7 B.C.D. 894 (Bkrtcy.W.D.Tenn. 1981).

The case of *In Re Coomer,* 8 B.R. 351 (Bkrtcy.E.D.Tenn.1980), as applied in *In Re Slay,* 8 B.R. 355 (Bkrtcy.E.D.Tenn.1980), provides a noteworthy exception to the Courts' consistent denial of purchase money status when collateral secures its own price as well as antecedent debts. The Court in *Coomer, supra,* expressed concern that the prevailing construction ignores the language of the definition which makes a security interest purchase money *to the extent* the collateral secures its price. The Court stated:

"The real problem is proving the purchase money security interest. (Citations omitted.) Section 9–107(a) does not completely exclude the seller's purchase money security interest, but without a method of determining its extent, the seller must be held not to have a purchase money security interest. Likewise, there is nothing in section 9–107(b) that says that a lender who makes a partly purchase money loan cannot have a partly purchase money security interest." Id. at 353–354.

While expressing these reservations the Court in *Coomer* still applied the prevailing rule to the consolidation of a purchase money and a nonpurchase money interest to find that the interest must be deemed nonpurchase money in the absence of a method "for determining the extent to which the new furniture secures only its purchase price." 8 B.R. at 355.

Approximately a week later, the same Court, in *In Re Slay, supra,* which should be considered in connection with *Coomer,* held that where a lender consolidates a purchase money loan, the lender effectively gives up its purchase money status, but that where

after consolidation of a purchase money loan with a subsequent nonpurchase money loan, no payments were made, the amount of purchase money debt was that owed at the time of consolidation, and the creditor had a secured claim for the value of the purchase money collateral which could not be avoided in bankruptcy.

■ The Court, while concurring with the holdings in *Jones, Coomer,* and *Slay, supra,* must distinguish the facts of the instant situation from those of the above cases. The matter before the Court does not involve the consolidation of two debts, one of which may be characterized as a purchase money obligation, nor does it involve the advancement of additional funds to the debtor upon the refinancing or renegotiation of a loan. No additional collateral was involved other than that specified in the original installment contract. The higher interest rate upon renegotiation of the loan appears to be the only difference between the two transactions.

The net pay-off amount due as of the date of the filing of the petition is $1157.59, and there is no factor present which would lead to the conclusion that the "character" of the purchase money security interest was changed by the mere renewal of the loan in March, 1980.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, R.B.P.

WHEREFORE, IT IS ORDERED AND ADJUDGED that Credithrift is the holder of a valid purchase money security interest in household goods in the amount of $1157.59, which is not subject to avoidance by the debtors pursuant to 11 U.S.C. § 522(f).