**JOHN DEERE COMPANY, Plaintiff and Counter-Defendant-Appellant,**

v.

**PRODUCTION CREDIT ASSOCIATION OF MURFREESBORO, Defendant and Counter-Plaintiff-Appellee.**

Court of Appeals of Tennessee, Western Section at Nashville.

Sept. 5, 1984.

Application for Permission to Appeal Denied by Supreme Court March 4, 1985.

B. Timothy Pirtle, McMinnville, for plaintiff and counter-defendant-appellant.

George C. Eblen, Shelbyville, for defendant and counter-plaintiff-appellee.

NEARN, Presiding Judge, Western Section.

This appeal involves a dispute between two commercial lenders, John Deere Company and Production Credit Association (P.C.A.), over their interests in the proceeds from the sale of a piece of farm equipment purchased by James Willis. The Chancellor held that neither had priority over the other under Article 9 of the U.C.C. (T.C.A. § 47-9-101, *et seq.*), and that their rights in the proceeds were pro rata, according to the amount each loaned to Willis.

The facts are not disputed. In a transaction prior to the one in question here, P.C.A. acquired a security interest in "all farm machinery and equipment, including but not limited to all tractors, tilling and

harvesting equipment" owned by Willis and in all such property acquired in the future. The financing statement was properly filed on December 10, 1980. At that time, Willis owned a John Deere 6600 combine.

In September, 1981, this combine burned. The insurance proceeds on the combine were turned over to P.C.A. and applied to Willis' debt. Shortly thereafter, Willis borrowed $17,859.03 from P.C.A. to be used as a down payment on the purchase of a new combine and flex head from General Equipment Company (hereinafter "General").

To provide these funds, a sight draft made payable to General, drawn on a P.C.A. account and signed by Willis, was given to Willis by P.C.A. The face of the draft contained wording that it was to be used for the purchase of a John Deere 6620 combine, with a specific serial number. At the time of the issuance of this draft, P.C.A. did not obtain a new security agreement from Willis, nor was a new financing statement filed. However, the P.C.A. financing statement filed on December 10, 1980, contained both a future advances clause and an after-acquired property clause.

The same day that the sight draft was issued by P.C.A.—October 14, 1981—Willis signed a retail installment contract for the purchase of a new John Deere 6620 combine and a new John Deere 215 flex head from General for $59,000.00 less a down payment of $17,800.00. At the same time, he also signed a security agreement and financing statement in favor of General, which was properly filed on October 23, 1981. General accepted the draft of P.C.A. as down payment on the combine. Shortly after the transaction was completed between Willis and General, General assigned the security agreement and financing statement to the John Deere Company. John Deere accepted the assignment from General on October 29, 1981.

Subsequently, Willis defaulted on both the debts to P.C.A. and to John Deere. He voluntarily released the combine and flex head to P.C.A. At the time of the default, the balance owed to Deere was $52,216.28 and the balance owed to P.C.A. was $17,-859.03. Deere filed suit against Willis and P.C.A., seeking possession and sale of the combine, that the proceeds be paid into the Court for a determination of the interests of P.C.A. and Deere and that a judgment for any deficiency be entered against Willis. P.C.A. surrendered the collateral with a reservation of its rights in the proceeds and filed a cross-claim against Willis and John Deere claiming a purchase money security interest in the combine in the amount loaned to Willis by P.C.A. for the down payment, $17,859.03. P.C.A. based its claim upon the draft dated September 14, 1981, issued by it to General and upon its original financing statement and security agreement filed in December, 1980.

Willis neither appeared nor filed any pleading. In a non-jury trial, the Chancellor gave John Deere a judgment against Willis in the sum of $52,216.28 as the unpaid balance of the promissory note, plus attorney's fees in the amount of $3,600.00.

As to P.C.A.'s claim against John Deere, the Chancellor held that each of the creditors had a purchase money security interest in the collateral and that to the extent of its $17,859.03 loan to Willis, P.C.A. had an equal priority in the combine or in the proceeds therefrom with John Deere. Based on the percentage ratio of the amount of the down payment to the purchase price, he awarded P.C.A. judgment against John Deere in the sum of $16,-860.00.

John Deere Company appeals and insists that P.C.A. could not have a purchase money security interest in the collateral based on the filing of their financing statement of December 1980 that contained an after-acquired property clause. We hold that P.C.A. does have a purchase money security interest in the collateral and because their financing statement was filed prior to Deere's, they also have priority over Deere's interest. We therefore must affirm in part and reverse in part.

Pursuant to T.C.A. § 47-9-204, a party has a valid security interest in collateral when there is an agreement between the debtor and the secured party that the secured party has an interest in the collateral, when the secured party gives value and when the debtor has rights in the collateral. In order to perfect a security interest in farm equipment to insure that it will be superior to interests of third parties, the secured party must file a financing statement in the county of the debtor's residence. See T.C.A. § 47-9-401(1). If the value given is used by the debtor to purchase the collateral, then the secured party has a purchase money security interest in the collateral, which normally would give him priority over any other security interest in the same collateral, as long as he perfected his interest by filing a financing statement within twenty days of the debtor receiving possession of the collateral. See T.C.A. §§ 47-9-107(b) and 47-9-312(4).

In this case we have two secured parties fighting over the same collateral, now converted to money. It is undisputed that Deere has a perfected purchase money security interest in the collateral. It is also undisputed that P.C.A. gave the debtor money to purchase the collateral. The problem is that the security agreement and financing statement that P.C.A. is relying on were filed earlier, in another loan transaction. However, both of these instruments include an after-acquired property clause that we believe is sufficient to accomplish the purpose of giving P.C.A. a purchase money security interest in the combine. This is especially true in this case because the recorded financing statement specifically describes farm equipment. The purpose of the financing statement is to put third parties who check the filings on notice. We believe the financing statement P.C.A. had on file would have alerted Deere to the possibility that P.C.A. had an interest in the collateral. After thus being notified, it was incumbent upon Deere to look into the matter further if they wanted to make sure that they had the highest priority interest in the collater-

al. That is the purpose of notice filing. The burden is upon the party seeking a purchase money security interest to check recorded filings. Such task certainly should be performed when the credit advanced is substantially less than the purchase price of the collateral. Such fact clearly opens up the distinct possibility that someone else has advanced the debtor funds and will therefore be claiming a purchase money security interest in that collateral.

Because this is a case of first impression, we have done considerable independent research. We find no case directly in point. However, there are some reported cases that on first blush may appear to be contrary to our holding and therefore should be discussed.

There are a group of cases, dealing with consumer goods, that hold that if the collateral in question secures both its own purchase money loan and any other non-purchase money loan, the security interest loses its purchase money character. See *In re Manuel*, (1975 5th Cir.) 507 F.2d 990; *In re Jones*, (1980 Bankr.M.D.N.C.) 5 B.R. 655; *In re Coomer*, (1980 Bankr.E.D.Tenn.) 8 B.R. 351; *In re Slay*, (1980 Bankr.E.D. Tenn.) 8 B.R. 355; *In re Jebbia*, (1980 Bankr.S.D.Ala.) 9 B.R. 542; *In re Mulcahy*, (1980 Bankr.S.E.Ind.) 3 B.R. 454. We believe those cases are here inapplicable because they are concerned with different facts and different policy issues. The cited cases deal with consumer goods and we are dealing here with farm equipment, which is an entirely different category of collateral. See T.C.A. §§ 47-9-109(1) and 47-9-109(2). Further, the purpose of the bankruptcy laws, particularly in consumer cases, is to give the debtor a "fresh start". There is, in order to accomplish this purpose, a household goods exception that allows bankrupt debtors to retain a certain amount of their household property if there is not a creditor who claims a purchase money security interest in the property. See 11 U.S.C. § 522(f)(2)(A). The Bank-

ruptcy Courts therefore construe the law in favor of the exemption in order to effectuate the policy of the Bankruptcy Act. See *In re Coomer, supra.* In this case we are not concerned with household goods; the debtor, insofar as we know, is not officially bankrupt; is not present on appeal and has no interest in this appeal. These are major distinguishing features between this case and those cited.

In the cited cases, there was a consumer who borrowed money to buy household goods. The creditor took a purchase money interest in those goods. Later, the creditor loaned more money, sometimes extinguishing the first debt, retaining a purchase money interest in the original collateral to the full extent of the new loan. The consumer then declared bankruptcy and sought to avoid the creditor's purchase money security interest in his household goods. In each of the cited cases, except *In re Slay, supra,* the Bankruptcy Court held that by consolidating the loans the creditor lost any purchase money security interest in the collateral because the collateral was securing more than its purchase price, with no way to determine which portion of the loan represented only the purchase money. The exception, *In re Slay, supra,* held that in a case where the loan was consolidated, but no payments were made on the consolidated loan, the Court could easily determine what portion was purchase money and therefore the creditor retained a purchase money security interest to the extent of that amount.

In the case at bar, as far as we can determine from record, P.C.A. had a security agreement and a prior recorded financing statement and based thereon advanced to the debtor $17,859.03. The draft for $17,859.03 was given to the debtor, who in turn gave it to Deere, who applied it as a down payment for the new collateral. The undisputed testimony of P.C.A. was that no payments were made on the new loan. There is no difficulty in determining what portion of the loan was represented by the purchase money.

Additionally, P.C.A. is not claiming a purchase money security interest in the collateral any greater than the purchase money it loaned. They are claiming a purchase money security interest to the extent of the present consideration they advanced for the purchase of the combine, not for any prior loans they made. If they were, different results might be reached. See T.C.A. § 47–9–107, comment 2.

Therefore, we hold that P.C.A. has a purchase money security interest in the combine only up to the amount of the value they gave that was used for the purchase, that is, for $17,859.03. It is not our view that in all cases where a financing statement is filed and the lender has an after-acquired property clause in the financing statement that a *purchase money* security interest is retained in whatever the borrower purchases. A security interest yes, but the type will depend upon the circumstances. Where the funds are delivered by the lender for the specific purpose of purchasing specific equipment that is specifically covered by the prior financing statement of the parties, that security interest is a purchase money security interest when the funds are so used. Such are the provisions of T.C.A. § 47–9–107(b).

Deere asserts that a new financing statement had to be filed for P.C.A. to obtain a purchase money security interest in the combine. We see no reason for a second filing of a financing statement by P.C.A. to insure a purchase money security interest. The first filing was notice to the world of a security interest in farm equipment and after-acquired property, and any further notice filing would be, in our opinion, supererogation.

■ Since we hold that both parties have a perfected purchase money security interest in the combine, it must be determined which has priority.

Both interests attached at the same time, that is, when the debtor acquired rights in the collateral. P.C.A. had, in essence, a pre-filing and Deere's filing related back to the day the debtor obtained possession under T.C.A. § 47–9–312(4). Since this sec-

tion does not assist us in determining which party has priority, we must look to the "clean up" section, § 47–9–312(5). Since both parties perfected by filing, the first to file has priority. See T.C.A. § 47–9–312(5)(a). Therefore, P.C.A.'s purchase money security interest is superior to Deere's.

Accordingly, P.C.A. is entitled to $17,-859.03 of the disputed fund and John Deere is entitled to the balance.

The result is that the holding of the Chancellor that both P.C.A. and Deere possess purchase money security interest in the collateral is affirmed. However, his holding that the interests are held equally on a pro rata basis is reversed. Costs below are as there adjudged. Since the assessment of costs of appeal are not governed by the U.C.C., we adopt in principal the policy of the Chancellor and assess them on an equal, pro rata basis of one-half to each.

Done at Nashville in the two hundred and eighth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

TOMLIN and HIGHERS, JJ. concur.