**DEUTZ–ALLIS CREDIT CORPORATION f/k/a Allis Chalmers Credit Corporation, Appellee,**

v.

**LYNCH FARMS, INC., Bob Lynch, and Sur-Gro Finance, Inc., Appellants.**

No. 85–1544.

Supreme Court of Iowa.

May 21, 1986.

Robert A. Rolfe, Lamoni, for appellants.

Thomas E. Salsbery and Carla A. Scholten of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, CARTER, WOLLE, and LAVORATO, JJ.

LAVORATO, Justice.

In this appeal, plaintiff Deutz-Allis Credit Corporation (DACC) and defendant Sur-Gro Finance, Inc. (SGFI) argue over whose security interest in the same collateral is

prior under Iowa Code chapter 554 (1983). In a well-written opinion, the trial court held that DACC's purchase money security interest (PMSI) was prior to SGFI's blanket security interest. We affirm.

In April, 1982, Lynch Farms, Inc. (LFI), defendant Bob Lynch, and his wife Elizabeth entered into a security agreement with a small-town bank. The agreement granted the bank an interest in after-acquired machinery and equipment of LFI. It further provided that the bank's prior written consent was necessary for the disposal of machinery and equipment by LFI. On April 28, the bank filed a financing statement, claiming a blanket security interest in machinery and equipment of LFI.

In November, 1982, LFI entered into a retail-installment contract with an implement company for the purchase of a combine. LFI traded in an old combine and other equipment as a down payment, but neglected to obtain prior written permission from the bank. On November 10, the implement company filed a financing statement listing LFI as the debtor, and assigning its PMSI in the combine to DACC. Bob Lynch signed the financing statement in his corporate capacity as president of LFI.

On December 23, a second financing statement, listing the PMSI in the combine, was filed. This time, however, Bob Lynch signed individually, making no reference to his corporate capacity.

As a result of continuing negotiations, LFI and the implement company entered into a second installment contract, which, in conjunction with the first installment contract, represented the complete agreement between the parties. This second contract, signed one day after the filing of the second financing statement, granted a PMSI to the implement company, which assigned it to DACC.

In March, 1984, SGFI purchased the bank's interest in after-acquired machinery and equipment of LFI. On March 16, it filed a financing statement, claiming a blanket security interest in machinery and equipment of LFI.

What happened next comes as no surprise: LFI defaulted on its payments under the installment contract with the implement company. DACC, the assignee of the PMSI held by the implement company, then brought an action to replevy the combine. *See* Iowa Code ch. 643. Neither LFI nor Bob Lynch attended the hearing on DACC's application for immediate possession, which was granted by the trial court. DACC posted bond and took possession of the combine and equipment. At a second hearing, the trial court issued its decree in favor of DACC, and SGFI now appeals.

SGFI claims the PMSI held by DACC was not properly perfected, and thus not prior to its own security interest, because the first financing statement was terminated under Iowa Code section 554.9404(1), and not in compliance with Iowa Code section 554.-9402(1).[1] SGFI also argues its security interest is entitled to a higher priority than the PMSI held by DACC because LFI's trade-in for the collateral was unauthorized, in violation of its security agreement with the bank, SGFI's assignor. Our review is on error. *Glenn v. Keedy*, 248 Iowa 216, 219, 80 N.W.2d 509, 511 (1957); *see* Iowa Code § 643.2.

## I. *Perfection by prefiling a financing statement.*

There is no dispute that chapter 554 applies to these transactions, that both parties have attached security interests in the same collateral, and that DACC's security interest is a PMSI. *See* Iowa Code §§ 554.1201(37), .9102, .9107(a), .9203. The issue here is perfection. In this case an effective financing statement must have been filed by DACC to perfect its PMSI, and thus receive priority over SGFI's claim to

---

1. SGFI also claims the PMSI held by DACC was not properly perfected because the second financing statement was not in compliance with Iowa Code section 554.9402(1), as Bob Lynch did not sign it in his corporate capacity. We conclude the PMSI held by DACC was properly perfected by the first financing statement. Thus, we need not address this second argument.

the collateral. *See* Iowa Code §§ 554.-9302(1), (2), .9303(1), .9312(4).

Section 554.9402(1) sets forth the requirements of a financing statement, and then provides it "may be filed before a security agreement is made or a security interest otherwise attaches."

■ *A.* SGFI argues DACC did not perfect its PMSI because the first financing statement was terminated with the signing of the second installment contract by LFI, the debtor, and the implement company, the secured party. It claims support for this argument in section 554.9404(1), which requires a secured party, upon demand and when there is no outstanding secured obligation, to send the debtor a termination statement stating that he no longer claims a security interest under the financing statement.

We agree with the trial court that section 554.9404(1) is inapplicable to the facts here: LFI made no demand for a termination statement from DACC, none was filed, and, as the trial court found, there was an outstanding secured obligation at the time of the signing of the second contract.

■ *B.* SGFI alternatively argues DACC did not perfect its PMSI because the first financing statement was filed forty-four days before the signing of the second installment contract. Relying on other provisions in chapter 554 with express time limitations, it suggests that a limitation period of twenty-one days, before attachment of a security interest, is implied in section 554.9402(1).

The short answer to this argument is that a court may not add words to a statute. *In re Clay*, 246 N.W.2d 263, 265 (1976). As the trial court succinctly stated:

> Section 554.9402(1) [contains] no time limitation. The meaning of the word "before" is not ambiguous; if a specific time limitation was meant to apply, [the legislature] would have provided one.

*See* Iowa R.App.P. 14(f)(13).

We conclude that under the circumstances the trial court did not err in determining the PMSI held by DACC was properly perfected by the first financing statement.

## II. *Unauthorized trade-ins and priority.*

■ For purposes of argument, DACC assumes that LFI breached its security agreement with the bank, SGFI's assignor, when it traded in its old combine and equipment for the new ones, the collateral in dispute. It maintains this event has no bearing on the issue of priority under chapter 554. We agree.

The resolution of this issue depends on what provision of chapter 554 establishes priority between the security interests of the parties. SGFI argues section 554.-9306(2), by virtue of section 554.9312(1), gives priority to its blanket security interest. Section 554.9312(1) provides "[t]he rules of priority stated in other sections of this Part ... shall govern when applicable...." SGFI argues this language encompasses section 554.9306(2), which provides that

> a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds....

In contrast, DACC argues the pertinent statute governing priority is section 554.-9312(4), which provides:

> A purchase money security interest ... has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty days thereafter.

We believe that section 554.9306(2) was not intended to establish priority between security interests in the same collateral. Section 554.9306(2) is concerned with perfection:

> What it means [in section 9–306(2) ] is that the secured party's hold on the collateral is as firm after the debtor's disposition of the collateral as it was before. Put another way, that means that anyone dealing with the collateral deals with it

subject to the continuing security interest.

Always? No, not always.

\* \* \* \* \* \*

The security interest continues through that disposition. This is not to say that that security interest may not be rudely cut off by some other Code section ..., but only that the unauthorized disposition does not unsettle any security interest.

T. Quinn, *UCC Commentary and Law Digest* § 9–306[a][2], at 9–169; 9–306[a][12], at 9–175 (1978); *accord, John Deere Co., Inc. v. Production Credit Association,* 39 UCC Rep. 1882, 1884 (N.Y.S.C.1984) (an unauthorized trade-in does not "magically convert" a security interest into a PMSI).

We agree with those commentators who have rejected the notion that the Uniform Commercial Code counterpart to Iowa Code section 554.9306(2) relates to the priority of security interests. *E.g.,* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 1040–41 n. 19 (1980) ("Clearly [section 9–312] is a priority provision; no words in [section 9–306] show it to be anything but a statement that a certain interest is perfected."); Quinn, *supra,* § 9–306[a][2], at 9–169; § 9–306[a][12], at 9–175; Kripke, *Suggestions for Clarifying Article 9: Intangibles, Proceeds, and Priorities,* 41 N.Y.U.L.Rev. 687, 726 (1966); *see also,* R. Dole, *The Fundamentals of Article 9 of the Uniform Commercial Code* § 5.4, at 183 (1982) (purchase money security interests have a "privileged status"); 2 A. Squillante & J. Fonseca, *The Law of Modern Commercial Practices* § 11.38, at 276 (1986 cum. supp.) ("Purchase money security interests have long had the protection of priority rules."); *but see* Henson, *Counter Suggestions Regarding Article 9: A Reply to Professor Kripke,* 42 N.Y.U.L.Rev. 74, 75–77 (1967). Adopting the contrary view "would cause great disruption in the financing of the purchase of farm equipment; a financier ... would have no assurance that its PMSI was good against all others, which is precisely the situation sought to be avoided by § 9–312(4)...." *John Deere Co., Inc.,* 39 UCC Rep. at 1884.

■ Unfortunately for the secured party, a covenant with the debtor in the security agreement requiring prior authority for the disposition of collateral is only as valuable as compliance with it. On the other hand, SGFI's interest continues in the combine and equipment traded in by LFI, and it can seek recovery for that in another action.

We hold that, under the circumstances of this case, the PMSI held by DACC was properly perfected by the filing of the first financing statement. In addition, the debtor's unauthorized disposition of collateral did not affect the priority between the competing security interests, established in section 554.9312(4).

AFFIRMED.