**In re Wilbert D. HASSEBROEK and Nancy J. Hassebroek, Debtors.**

**Bankruptcy No. X91–00798M.**
**Contested No. 5116.**

United States Bankruptcy Court,
N.D. Iowa.

Nov. 5, 1991.

---

* This court's decision and order are dated September 22, 1989.

Larry S. Eide, Mason City, Iowa, for debtors.

Habbo G. Fokkena, Clarksville, Iowa, trustee.

John L. Duffy, Mason City, Iowa, for Norwest Bank Minnesota South Central, Nat. Ass'n.

## MEMORANDUM OF DECISION AND ORDER RE: DEBTORS' MOTION TO AVOID LIENS

WILLIAM L. EDMONDS, Bankruptcy Judge.

Debtors filed a motion seeking partial avoidance of a creditor's liens against two motor vehicles. The lienholder, Norwest Bank Minnesota South Central National Association, located in Mankato, resists the motion. Trial was held in Mason City, Iowa on October 8, 1991. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

### FINDINGS OF FACT

Wilbert and Nancy Hassebroek (DEBTORS or HASSEBROEKS) filed their joint chapter 7 petition on April 26, 1991. Prior to bankruptcy, they were involved in a livestock hauling business. Debtors have claimed as exempt their equity in two vehicles used in the business—a 1987 Freightliner tractor-truck and a 1988 Freightliner tractor-truck. The parties stipulate that debtors' exempt interest in the two trucks, or either of them, is calculated at $3,745.00.

Hassebroeks purchased the 1987 Freightliner in January, 1987 from the B.H. Chesley Co. For the purchase, Hassebroeks borrowed $60,000.00 from Norwest and granted Norwest a purchase money security interest in the truck. The money was borrowed on January 5, 1987, on which date Hassebroeks executed and delivered to the bank promissory note no. 101394. The note provided for 48 monthly payments with interest at a fixed rate of 10 per cent per year; monthly payments after the first month were scheduled at $1,521.75. Final payment on the note was to be January 21, 1991.

On January 15, 1988, Hassebroeks entered into an installment purchase contract (No. 0117630) with the B.H. Chesley Co. for the purchase of a 1988 Freightliner tractor. Debtors obtained credit for an $18,000.00 down payment by trading in a 1982 truck. The balance of the purchase price, $50,868.00, was to be paid over four years, with each payment after the first being $1,296.25. The contract was to be paid off in full on January 13, 1992. The annual percentage interest rate on the amount financed was 10.25. To secure their contract obligation, Hassebroeks granted the seller a security interest in the truck. The contract was immediately assigned to Norwest which regularly financed sales by the B.H. Chesley Co.

The note and security agreement used for the purchase of the 1987 Freightliner contained the following provision regarding the law governing the transaction: "The law of the state where your main office is located governs this agreement." It is clear from the language of the agreement

that "your" referred to the bank. The installment sales contract executed by Hassebroeks contains the provision that "[t]his agreement is governed by Minnesota law."

In 1990, a salesman for the B.H. Chesley Co. approached Wilbert Hassebroek about his purchasing another Freightliner truck. The salesman also had conversations with "the bank" [Norwest] about its financing the purchase. Hassebroek decided to buy a 1991 Freightliner. He had no money for a down payment so he offered the 1987 and 1988 trucks as additional collateral for the loan. On or about August 1, 1990, he and Nancy Hassebroek submitted a loan application (Exhibit 3) to the bank requesting a loan for $109,000.00. The purpose for the loan was to "[p]urchase Truck Combine W/ two Present Notes." The bank agreed to lend the money. On or about July 27, 1990,[1] debtors executed a note to the bank for $109,015.69. It was to be paid back over a four-year period at 12 per cent interest per year. After the first payment, monthly payments were to be $3,000.00. The note, no. 445472, stated that "This agreement renews Note No. 117630 dated 01/15/88." The reference to note no. 117630 was to the installment contract which in its upper right hand corner bore the number 0117630. The new note made no mention of the promissory note on the 1987 Freightliner. There was no agreement between Hassebroeks and bank as to the allocation of the $3,000.00 per month payments to any note balance other than the July, 1990 note.

The loan "Disclosure Statement" which Bank provided to Hassebroeks indicated that of the loan proceeds of $109,015.69, the amount of $21,620.39 was used to pay off a prior loan, and $10,395.30 was paid to Norwest Bank on account of loan no. 101394. The former was the balance of the 1988 Freightliner sales contract as of July 27, 1990, and the latter was the balance of the 1987 Freightliner note on the same date. Seventy-seven thousand dollars was used to purchase the 1991 Freightliner. Also on July 27, Hassebroeks executed a

security agreement granting bank a security interest in all three vehicles and the debtors' equipment (Exhibit 6). Norwest's security interest in each of the three vehicles was perfected by notation of its interest on each of the Iowa certificates of title.

Wilbert Hassebroek estimates that when the couple filed their bankruptcy in April of 1991, the 1987 Freightliner had a fair market value of $19,000.00; the 1988 Freightliner had a value of $25,000.00, and the 1991 Freightliner had a value of $55,000.00.

Hassebroeks have surrendered the three Freightliners to the bank for liquidation, still claiming as exempt their interests in the 1987 and 1988 trucks to the extent of $3,745.00 in value. Bank has disposed of the 1991 Freightliner. It received $58,000.00 in net proceeds, which it applied to the unpaid balance of the 1990 note. Bank has also disposed of the 1988 Freightliner, receiving net proceeds of $22,500.00. Bank officer Max Langer estimates that the value of the 1987 Freightliner, "as is", is between $12,000.00 and $17,000.00.

At the time of the filing of the bankruptcy case, bank had placed the promissory note on non-accrual basis; at that time, it had a balance of $97,176.00. Hassebroeks became delinquent on the note in March, 1991. The loan balance at the time of the hearing, not including all interest, was $17,026.00.

At the time the note for the 1991 Freightliner was executed, the bank marked the note on the 1987 Freightliner (no. 0101394) "(Renewal—Do Not Release)". No such marking was made on the installment contract. Langer testified that the bank, in making the 1990 loan, did not intend that the prior notes be considered as paid off. Wilbert Hassebroek, on the other hand, testified that when he executed the 1990 note on the 1991 Freightliner, he had assumed that the prior two notes had been "paid off."

1. Relating to the purchase of the 1991 truck, the note, security agreement and loan disclosure statement are dated July 27, 1990. The loan application, however, is dated August 1, 1990. No party has argued that this difference in dates is significant.

## CONCLUSIONS OF LAW

Hassebroeks seek to avoid Bank's liens in the 1987 and 1988 Freightliners to the extent of $3,745.00. They claim that the liens are non-purchase money and thus avoidable under 11 U.S.C. § 522(f)(2)(B). Hassebroeks maintain that although Bank's security interests in the two Freightliners were originally purchase money interests, this status under the Uniform Commercial Code was destroyed by the July, 1990 refinancing and consolidation. Bank denies that any novation contract or substitution in obligations took place as a result of the refinancing transaction and contends that it retains purchase money security interests in the two vehicles.

Resolution of the dispute requires a two-step analysis. First, the court must determine whether the July, 1990 loan transaction was a contract of novation displacing the prior note, installment sales contract and security agreements. If the new loan was a substituted contract, then the purchase money security interests of the bank in the two vehicles was eliminated. Second, if the 1990 loan was not a novation contract, then the court must determine the extent of the bank's purchase money security interests in the two trucks.

I conclude that the 1990 note and security agreement constituted contracts of novation, and that the bank did not retain purchase money security interests in the trucks. However, even were I not to find a novation, I would find and conclude that the debtors' exempt interests in the trucks, in the aggregate amount of $3,745.00, was not impressed with purchase money security interests either at the time of filing or at the time of the hearing.

"A novation or substituted contract is 'a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty.'" *In re Hansen*, 85 B.R. 821, 826 (Bankr.N.D. Iowa 1988), *citing Sergeant v. Leonard*, 312 N.W.2d 541 (Iowa 1981). The essential elements of a novation were set out in *Wade & Wade v. Central Broadcasting Co.*, 227 Iowa 422, 288 N.W. 439, 441 (1939):

'It is the general and well-recognized rule that the necessary legal elements to establish a novation are parties capable of contracting, a valid prior obligation to be displaced, the consent of all parties to the substitution, based on sufficient consideration, the extinction of the old obligation, and the creation of a new one.'

*Citing Himmelberger v. Central State Bank (In re Talbott's Estate)* 209 Iowa 1, 224 N.W. 550, 552 (1929).

The critical element is the intent of the parties to create a new obligation—did the parties intend "to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accent the new as further security...." *Eitzen's Estate v. Lauman*, 231 Iowa 1169, 3 N.W.2d 546, 550 (1942).

The burden is on the party asserting a novation to establish it by clear and satisfactory evidence. *Id.* A novation is never presumed. In prior cases, several factors have been considered in determining whether the parties intended to extinguish an existing debt by the creation of a new obligation. They include whether new money was advanced, whether the debtor's payments were increased, whether the creditor took additional collateral and whether a new security agreement was executed. *In re Fricke*, No. L91–01056W, slip op. at 9 (Bankr.N.D. Iowa, Oct. 22, 1991).

All of these elements existed in the July, 1990 transaction. Bank advanced $77,000.00 in additional funds to finance the purchase of a 1991 truck; the period of payment on the old loans was extended; the interest rate on the new loan was 12 per cent compared to 10.25 per cent on the contract and 10 per cent on the note; a new security agreement was executed and in it debtors granted bank a security interest in additional collateral to secure the new note. This additional collateral included equipment, farm equipment, shop equipment, furniture, parts and tools. (Exhibit 6.) Monthly payments were increased to $3,000.00. There was no formula provided

to allocate these monthly payments among separate loan balances.

Direct evidence as to whether the old loans were extinguished was contradictory. The new note (Exhibit 5) provided that the contract (Note No. 117630) was renewed. However, the Disclosure Statement (Exhibit 4) indicated that the new loan was "used to pay off" the balance of that debt. The disclosure statement also indicated that $10,395.30 was "paid" on Norwest Bank loan No. 101394, but the note was marked "Renewal—Do Not Release." (Exhibit 1.) There is no evidence that Hassebroeks were made aware of the bank's marking the note with this information. But whether old notes are marked "cancelled" or "renewed" is not determinative—it merely provides insight as to intent. *In re Hansen,* Bankr. No. 86–00638F, slip op. at 6 (Bankr.N.D. Iowa, March 12, 1987).

Having considered the loan refinancing transaction in its entirety, I conclude that the parties intended the extinguishment of the old note, contract and security agreements and intended to rely on the new note and security agreement. The new loan permitted payoffs of the old note and contract but did not enable the debtors to acquire rights in the collateral. Such rights were already the debtors'. The security interest obtained under the July, 1990 loan transaction was, therefore, not a purchase money interest under § 9–107 of the Uniform Commercial Code. This section is the same in Iowa and Minnesota.

Thus, the bank's purchase money security interests in the 1987 Freightliner and the 1988 Freightliner as provided respectively by note 101394 and by contract number 0117630 were extinguished by the note and security agreement entered into in July, 1990.

However, even were I to conclude that a novation did not exist, I would find that the Hassebroeks have exempt interests in the trucks to the extent of $3,745.00 which is not the subject of purchase money liens. Where novations have not been found, this court has applied the "dual status" rule to determine the extent of the creditor's purchase money lien under § 9–107 of the Uni-

form Commercial Code. *In re Butler,* Bankr. No. 86–01651C, slip op. at 10, 1987 WL 46571 (Bankr.N.D. Iowa, May 28, 1987). The "dual status" rule has also been applied in the bankruptcy court in Minnesota. *In re Hemingson,* 84 B.R. 604, 606–7 (Bankr.D.Minn.1988).

The application of the dual status rule requires the court to determine how much of the outstanding balance of the present loan represents a purchase money security interest. Proration or allocation of the new loan payments to the debtors' loan balances is required. In this case, no allocation formula was provided by contract, and none is provided for in the Uniform Commercial Code. A first in, first out (FIFO) method of allocating payments to debt is promoted by one well regarded work. J. White & R. Summers, Uniform Commercial Code, 333–334 (3d ed. 1989). Under a FIFO method, the debtor's payments of principal are applied to debts in the order first incurred. The FIFO method is fair to debtors as it encourages creditor refinancing and prohibits creditor overreaching. *In re Butler,* Bankr. 86–01651C, slip op. at 10, n. 7, 1987 WL 46571 (Bankr. N.D. Iowa, May 28, 1987). It also recognizes the commercial reality that the earlier purchased collateral depreciates faster. White and Summers, *id.* at 334.

A *rough* application of the FIFO method in this case indicates that the bank, at filing, had a security interest in the 1987 Freightliner which had no purchase money component. The evidence shows, without any specificity as to exact dates, that the Hassebroeks made $3,000.00 loan payments from August through February, 1990. The principal balance of the loan on August 26 was $109,015.00. The interest portion of the $3,000.00 payment made on that date can be calculated by applying a 12 per cent interest rate to the principal balance and dividing by 12 months. The interest payment on August 26 would have been approximately $1,090.00. Thus the principal payment was the difference between the interest figure and $3,000.00 or roughly $1,910.00. By using this method and applying the 12 per cent rate to the declining

principal balances, Hassebroeks would have paid, over the seven-month period, approximately $13,776.00 toward principal, after interest had already been paid. The principal balance on the 1987 Freightliner on July 27, 1990 was $10,395.30. Thus, even if I were to find an intent to continue a purchase money interest, there would be no purchase money component in the bank's security interest in the 1987 Freightliner.

By subtracting the $10,395.30 loan balance from the $13,776.00 in principal allocation, it is determined that $3,381.00 would then be applied to the principal balance of the 1988 Freightliner contract as of February 26, 1991, leaving a principal balance on that date of approximately $18,239.00. There is no evidence of exactly when Norwest sold the 1988 Freightliner, but I will assume on September 26, 1991. Interest on $18,239.00 calculated from February 26, 1991 to the date of sale and compounded monthly would be approximately $1,316.00. Added to the principal balance, this would result in a loan balance on September 26, 1991 of approximately $19,555.00.

The net sales price of the 1988 truck was $22,500.00. Of this amount, the bank could have retained a purchase money component of $19,555.00 and a non-purchase money component of $2,945.00.

In summary, even were I not to have concluded that the purchase money nature of the bank's security interest was eliminated by a novation, I would have still found and concluded that the bank, as of the date of trial, had a purchase money interest in the 1988 Freightliner limited to $19,555.00 of the sales proceeds and that the bank's security interest in the 1987 Freightliner had no purchase money component.

## CONCLUSIONS OF LAW

Norwest Bank does not have a purchase money security interest in the debtors' 1987 Freightliner tractor truck or the debtors' 1988 Freightliner tractor truck. Bank does have non-purchase money security interests in these vehicles, but these liens may be avoided by the debtors to the aggregate amount of $3,745.

## ORDER

IT IS ORDERED that judgment shall enter that the security interests of the Norwest Bank Minnesota South Central Association in the debtors' 1987 and 1988 Freightliner tractor trucks is avoided to the extent of $3,745.00.

SO ORDERED.